R. Terry Parker, Esquire
RATH, YOUNG and PIGNATELLI, P.C.
One Capital Plaza
Concord, NH 03302-1500
Telephone: (603) 226-2600
Email: rtp@rathlaw.com

*Attorneys for Plaintiff*
*Carolyn Johnson*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| CAROLYN JOHNSON,<br><br>Plaintiff,<br><br>v.<br><br>MORGAN STANLEY SMITH BARNEY LLC,<br><br>Defendant. | Case No.: |

## COMPLAINT

The plaintiff Carolyn Johnson ("Plaintiff"), by her undersigned attorneys, Rath, Young

and Pignatelli, P.C., for her complaint against defendant Morgan Stanley Smith Barney LLC

("Morgan Stanley") alleges as follows:

### NATURE OF THE ACTION

1.      This is a civil action for breach of fiduciary duties and negligence against

Morgan Stanley, as well as false advertising and unfair competition.  Plaintiff, a retiree living in

Belknap County, New Hampshire sought financial advice from Morgan Stanley regarding her

retirement accounts.  Morgan Stanley made a number of misrepresentations and omissions of

material facts to Plaintiff in providing negligent financial advice to Plaintiff.  Plaintiff relied

1

upon these misrepresentations and omissions of material facts and suffered substantial financial

losses as a result while Morgan Stanley, on the other hand, obtained revenue from its unlawful

conduct.  Morgan Stanley's actions constitute (a) breach of fiduciary duty; (b) negligent

misrepresentation; (c) negligent failure to train and supervise; (d) false advertising in violation of

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (e) false advertising in violation of

RSA 358; and deceptive trade practices in violation of the common law.

## PARTIES

2.      Carolyn Johnson is an individual with an address at 520 Cherry Valley Road,

Gilford, New Hampshire 03249.  She retired to rural New Hampshire from Maryland after

serving more than 20 years in government service.

3.      Upon information and belief, Morgan Stanley is a limited liability company

organized under the laws of Delaware with a principal place of business at 1585 Broadway, New

York, New York 10036.

4.      Morgan Stanley operates a business known as Graystone Consulting, through

which it promotes, offers, and sells financial services provided by Morgan Stanley consultants

who are advertised as providing a "highly thoughtful and disciplined approach to help

[customers] manage complexity, optimize investment return potential and align your mission

with your investment decisions. Each solution is designed to be as unique as your organization."

Morgan Stanley further advertises that its Graystone consultants "act in [its customers'] best

interest and are committed to providing [its customers'] customized strategies aligned with [its

cusomters'] unique investment objectives."

**JURISDICTION AND VENUE**

5.      This Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331,

1338(a) and 1338(b) because Plaintiff asserts a claim that arises under the laws of the United

States, namely, the Lanham Act, 15 U.S.C. § 1125 (the "Lanham Act").  This Court has

supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367 because

those claims are so related to Plaintiff's federal-question claims that they form part of the same

case or controversy.

6.      In addition, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §

1332 because there is complete diversity of citizenship between Plaintiff, a citizen of the State of

New Hampshire, and Morgan Stanley, a citizen of the State of New York, and the amount in

controversy, exclusive of interest and costs, exceeds $75,000.00.

7.      Personal jurisdiction over Morgan Stanley is proper as it is conducting business

in this judicial district and committing torts in this state, including without limitation the

unlawful conduct asserted herein which causes harm in this state and judicial district.

8.      Pursuant to 28 U.S.C. § 1391, venue properly lies in this Court because a

substantial part of the events giving rise to the claims herein occurred in this judicial district

**FACTUAL BACKGROUND**

9.      Late in the summer of 2018, Plaintiff and her husband Stephen Pattison decided

to do extensive renovations on their home in Belknap County, New Hampshire.  They applied

for a construction loan with a local bank, Bank of New Hampshire, but were told they were

carrying too much student debt to obtain such a loan.  Eager to begin construction in time for

completion before the New Hampshire winter brought an end to the construction season, Plaintiff

wrote an email to Morgan Stanley seeking financial advice.

10. Morgan Stanley had served as a broker/dealer for Plaintiff and her husband for many years, providing financial advice not only for assets that Plaintiff and her husband held with Morgan Stanley but also with respect to the couple's other financial concerns. Indeed, it was not uncommon for Plaintiff to seek advice from Morgan Stanley two or three times a month over the years.

11. In an email dated August 24, 2018, Plaintiff explained to Morgan Stanley that she wished to move about $100,000 out of her husband's retirement account to the couple's joint account as soon as possible to pay off some of their student loan debts and to begin home construction.

12. Plaintiff was familiar with borrowing from a retirement account. When she moved to New Hampshire a little more than a year earlier, she and her husband needed to close on their house here in New Hampshire while they waited for their house in Maryland to sell, so they borrowed $100,000 from her husband's retirement account and paid it back within 60 days, without incurring taxes or penalties. Plaintiff was also familiar with the tax advantages and investment advantages of being able to return that money to her account. For example, she understood she would owe income taxes on the $100,000 that she withdrew. In addition, she understood there were significant advantages to returning that $100,000 back to her investment portfolio. When she returned the $100,000, that money, which took many years to save up, could continue earning money in her financial portfolio.

13. Plaintiff hoped to do the same and explained to her advisor at Morgan Stanley, Maureen Shuler, that she needed money for renovations on her New Hampshire property, which she originally intended to finance through a bank loan until learning her balance sheet had too much school debt. Plaintiff further explained that she had originally intended to pay the school

debt with money she expected to receive from her father's estate, who had recently passed, but now she wished to borrow from her or her husband's retirement account to pay off some of the student loans in order to qualify for the construction loan. She planned to return the retirement account withdrawal once she obtained money from the construction loan and she hoped to make up that difference with other income or from her father's estate. She explained to Morgan Stanley her plan to take that money from her retirement account on day 59 and roll it into her husband's account to pay him back and buy another 60 days before incurring the penalty of taxes and the loss of investment opportunities.

14.     On or about August 26, 2018, Plaintiff and Ms. Shuler discussed Plaintiff's plan to borrow from her husband's retirement account and then to pay that retirement account back within 60 days by borrowing from Plaintiff's retirement account, while waiting for Plaintiff's father's estate to settle. Ms. Shuler advised Plaintiff to withdraw $100,000 from Mr. Pattison's retirement account so that Plaintiff could pay off a portion of the student loans and begin work on her renovations while applying for the construction loan. Plaintiff relied upon Morgan Stanley's advice and withdrew $100,000 from Mr. Pattison's retirement account.

15.     On September 17, 2018, Plaintiff again sought financial advice from Ms. Shuler. Plaintiff explained that her renovation project was moving at unanticipated speeds and she needed to raise more funds to cover construction costs, at least $60,000, which she hoped to obtain from her retirement account with the intent to return it within 60 days, without incurring taxes and penalties. Plaintiff noted that she would soon appear in court for her father's estate, "to get that whole operation in motion."

16.     On or about September 18, 2018, Ms. Shuler and Plaintiff discussed these recent developments. Ms. Shuler advised Plaintiff to withdraw $70,000 from her retirement account to

address the rising construction costs, with the understanding that Plaintiff would return $70,000

to her retirement account within 60 days to avoid income taxes on that $70,000 and allow that

$70,000 to continue to generate tax deferred growth in her portfolio. Plaintiff relied upon

Morgan Stanley's advice and withdrew $70,000 from Plaintiff's retirement account.

17.     On October 26, 2018, Plaintiff again sought financial advice from Morgan

Stanley. She explained more funds were needed for her renovation project to keep construction

going until she obtained a construction loan. She expected the construction loan to close on

November 5, 2018.

18.     However, the risks of rolling over her family's retirement account debt was, or

should have been, apparent to Morgan Stanley as Plaintiff disclosed to Ms. Shuler that she and

her husband anticipated returning just $65,000 to her husband's retirement account, from which

they had withdrawn $100,000. She explained that the Bank of New Hampshire did not want to

proceed with her construction loan until she paid off one of her student loans, which she had

intended to pay off with her inheritance but that inheritance had been delayed. She conceded she

may need Morgan Stanley's advice on withdrawing further funds to satisfy her family's financial

needs.

19.     Shortly after October 26, 2018, Plaintiff spoke with Ms. Shuler who advised

Plaintiff to remove a further $40,000 from Plaintiff's retirement account. Plaintiff explained that

she was concerned that there would be penalties for such a withdrawal. Ms. Shuler

countermanded Plaintiff's understanding, explaining that she had spoken with the legal

department at Morgan Stanley who confirmed that Plaintiff would not be taxed on that income

provided that $40,000 was returned to that retirement account within 60 days.

20.     Relying on Morgan Stanley's advice, Plaintiff withdrew $40,000 from her

retirement account.  Plaintiff would not have withdrawn the $40,000 had she known the law

prevented her from returning $40,000 to her retirement account where she could maintain the tax

and investment advantages of such an account.

       21.      In addition, Plaintiff sought advice from Ms. Shuler regarding a retirement

account Plaintiff inherited from Plaintiff's late father.  Plaintiff queried whether she would be

taxed for withdrawing money from this inherited retirement account.  Ms. Shuler informed

Plaintiff that Morgan Stanley's legal department had advised Ms. Shuler that Plaintiff would not

be taxed as a result of withdrawing $73,000 from her inherited retirement account as long as

$73,000 was returned to that inherited retirement account within 60 days.  Ms. Shuler assured

Plaintiff that Morgan Stanley's legal department had confirmed that there would be no taxes

imposed for withdrawing $73,000 from her inherited retirement account if $73,000 was returned

to that retirement account within 60 days.

       22.      Relying on Morgan Stanley's advice, Plaintiff withdrew $73,000 from the

retirement account she inherited from her late father.  Plaintiff would not have withdrawn the

$73,000 had she known the law prevented her from returning $73,000 to her retirement account

where she could maintain the tax and investment advantages of such an account.

       23.      As the closing for the construction loan neared, Plaintiff wrote Morgan Stanley

on November 1, 2018 to determine whether the deadline to return her initial $70,000 withdrawal

to her retirement account was November 20, 2018 and whether the deadline to return the second

withdrawal, for $40,000, was December 2, 2018.  She also queried whether she had a required

minimum distribution for 2018 for her father's retirement account that she could subtract from

the $73,000 to be returned.

       24.      Shortly after November 1, 2018, in a telephone call, Morgan Stanley disclosed to

Plaintiff that the Morgan Stanley legal department had misadvised Plaintiff.  Contrary to Morgan

Stanley's earlier representations, Plaintiff would not be allowed to return the $40,000 and the

$73,000 withdrawals to her retirement accounts and would incur income tax on those withdrawal

by the Internal Revenue Service for both withdrawals.  Plaintiff was shocked.

25.     Contrary to its advertising, Morgan Stanley did not provide to Plaintiff a

consultant as advertised, with a "highly thoughtful and disciplined approach to help [Plaintiff]

manage complexity, optimize investment return potential and align your mission with your

investment decisions."

26.     Contrary to its advertising, Morgan Stanley did not provide to Plaintiff a

consultant as advertised; that is a consultant who "act[ed] in [Plaintiff's] best interest and [who

was] committed to providing [Plaintiff] customized strategies aligned with your unique

investment objectives."

**COUNT I**
**(Breach of Fiduciary Duty)**

27.     Plaintiff incorporates by reference the allegations in each of the preceding

paragraphs as if fully set forth herein.

28.     Based on their unique or special expertise with respect to retirement accounts

and investments generally and Plaintiff's financial needs and conditions in particular, Morgan

Stanley had a special relationship of trust and confidence with Plaintiff, which gave rise to a

number of fiduciary duties owed by Morgan Stanley to Plaintiff.

29.     As a result of the fiduciary relationship, Morgan Stanley owed duties of care and

loyalty; was obligated to avoid any behaviors or omissions that could reasonably be foreseen to

cause harm to Plaintiff; to avoid decisions that would involve a conflict between Morgan

Stanley's interests and the interests of Plaintiff; to manage and operate Plaintiff's investments

8

exclusively for the best interest of Plaintiff; to make recommendations and execute transactions in accordance with the goals, investment objectives, and permissible degree of risk tolerable to Plaintiff; and to oversee the investment of Plaintiff's assets and to confirm they were maintained in a prudent and professional manner.

30.     Defendant breached its fiduciary duties to Plaintiff by failing to conduct adequate due diligence and monitoring with respect to Plaintiff's retirement accounts.

31.     Morgan Stanley breached its fiduciary duty by falsely representing to Plaintiff that she could, having already withdrawn $70,000 from her retirement account, make a second withdrawal of $40,000 and then a third withdrawal of $73,000 from her retirement accounts without tax consequences or penalties, provided she returned those sums to her retirement accounts within 60 days of the dates of the withdrawals.

32.     Morgan Stanley breached its fiduciary duty by failing to act solely in the interest of Plaintiff.

33.     Morgan Stanley breached its fiduciary duty by elevating its interest in obtaining fees from Plaintiff above Plaintiff's interest in avoiding financial harm.

34.     Morgan Stanley failed to disclose the following material information, among other things: that, having already withdrawn $70,000 from her retirement account, Plaintiff would be taxed on any subsequent withdrawals from her retirement account and would not be allowed to return those sums to her retirement account within 60 days of the withdrawals.

35.     Morgan Stanley made the false representations and material omissions knowing that Plaintiff would use and rely upon the representations and omissions for the particular purpose of determining whether to withdraw funds from her retirement account.

36.     Morgan Stanley made the false representations without regard to their truth or

falsity and was grossly negligent in making them.

37.     Plaintiff justifiably relied upon the false representations and material omissions made by Morgan Stanley by withdrawing funds from her retirement accounts.

38.     Morgan Stanley knew of the financial predicament faced by Plaintiff and that she would rely upon Morgan Stanley's false statements and material omissions for the particular purpose of withdrawing funds from her retirement accounts.

39.     As a result of her reliance upon the false representations and material omissions of Morgan Stanley, Plaintiff has suffered damages, namely the loss of her investments in her retirement accounts as well as taxes imposed by the Internal Revenue Service.

40.     As a result of the breach of fiduciary duties by the Morgan Stanley, Plaintiff has suffered damages, namely the loss of her tax-advantaged investments in her retirement accounts as well as taxes imposed by the Internal Revenue Service as a result of withdrawing funds from her retirement account.

41.     Plaintiff has been damaged as a result of this breach of fiduciary duties and is entitled to damages and appropriate equitable relief, including an accounting and the imposition of a constructive trust.

42.     Because of the outrageous nature of Morgan Stanley's breach of fiduciary duty, Plaintiff is entitled to punitive damages.

## COUNT II
### (Negligent Misrepresentation)

43.     Plaintiff incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

44.     As a securities broker/dealer, Morgan Stanley owes customers, including Plaintiff, a duty of care in accordance with the standard of care used by similar professionals in

the community under similar circumstances.

45.     Morgan Stanley knew or should have known that Plaintiff was relying on Morgan Stanley to manage the funds entrusted to Morgan Stanley with reasonable care.

46.     Morgan Stanley breached this reasonable standard of care when it falsely represented to Plaintiff that she could, having already withdrawn $70,000 from her retirement account, make a second withdrawal of $40,000 and then a third withdrawal of $73,000 from her retirement accounts without tax consequences and would not be allowed to return those sums to her retirement accounts within 60 days of the withdrawals.

47.     Morgan Stanley failed to disclose the following material information, among other things: that, having already withdrawn $70,000 from her retirement account, Plaintiff would be taxed and penalized on any subsequent withdrawals from her retirement account, regardless of whether she returned those sums to her retirement account within 60 days of those subsequent withdrawals.

48.     Morgan Stanley made the false representations and material omissions knowing that Plaintiff would use and rely upon the representations and omissions for the particular purpose of determining whether to withdraw funds from her retirement accounts.

49.     Plaintiff justifiably relied upon the false representations and material omissions made by Defendants by withdrawing funds from her retirement accounts.

50.     Morgan Stanley knew of the financial predicament faced by Plaintiff and that she would rely upon Morgan Stanley's false statements and material omissions for the particular purpose of withdrawing funds from her retirement accounts.

51.     As a result of her reliance upon the false representations and material omissions of Morgan Stanley, Plaintiff has suffered damages, namely the loss of her investments in her

retirement accounts as well as taxes imposed by the Internal Revenue Service as a result of withdrawing funds from her retirement accounts.

52.     Plaintiff has been damaged as a result of these breaches of the duty of care and is entitled to damages and appropriate equitable relief, including an accounting and the imposition of a constructive trust.

53.     Because of the outrageous nature of Morgan Stanley's negligent misrepresentation, Plaintiff is entitled to punitive damages.

### COUNT III
### (Negligent Failure to Train and Supervise)

54.     Plaintiff incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

55.     Morgan Stanley has a duty to consumers to properly, train and/or supervise its individual broker-dealers, including Ms. Shuler, to insure that they recommend suitable transactions for Plaintiff.

56.     Morgan Stanley breached its duty when it failed to train and/or supervise Ms. Shuler to the detriment of Plaintiff.

57.     To the detriment of Plaintiff, Ms. Shuler recommended financial transactions that were not suitable to Plaintiff and were damaging to Plaintiff.

58.     Morgan Stanley breached its duty of care when it failed to act consistently as a reasonable broker-dealer would under the circumstances in training and supervising Ms. Shuler who erroneously advised Plaintiff that she could, having already withdrawn $70,000 from her retirement account, make a second withdrawal of $40,000 and then a third withdrawal of $73,000 from her retirement accounts without tax consequences and would not be allowed to return those sums to her retirement account within 60 days of the withdrawals.

59.     But for the breach by Morgan Stanley in failing to train/supervise Ms. Shuler, Plaintiff would not have been the unwitting victim of erroneous financial advice from Morgan Stanley.

60.     As a result of the breach by Morgan Stanley in failing to train and supervise Ms. Shuler, Plaintiff has suffered damages, namely the loss of her tax-advantaged investments in her retirement accounts as well as taxes and fees imposed by the Internal Revenue Service as a result of withdrawing funds from her retirement accounts.

61.     Plaintiff has been damaged as a result of this failure to train/supervise and is entitled to damages and appropriate equitable relief, including an accounting and the imposition of a constructive trust.

62.     Because of the outrageous nature of Morgan Stanley's failure to train/supervise, Plaintiff is entitled to punitive damages.

## COUNT IV
### (violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B))

63.     Plaintiff incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

64.     Morgan Stanley advertises on its website located at its URL https://www.morganstanley.com/graystone/why-choose-graystone the following:

**Guiding You Through Complexity**

Your Graystone consultant will take a highly thoughtful and disciplined approach to help you manage complexity, optimize investment return potential and align your mission with your investment decisions. Each solution is designed to be as unique as your organization.

65.     Morgan Stanley further advertises on its website located at its URL https://www.morganstanley.com/graystone/why-choose-graystone that:

**An Independent and Objective Fiduciary Partner**

We believe in challenging conventional solutions, utilizing an unbiased and open architecture platform centered on your specific circumstances. When acting as fiduciaries, your consultants act in your best interest and are committed to providing you customized strategies aligned with your unique investment objectives.

66.    The aforesaid advertising of Morgan Stanley constitutes false advertising in violation of Section 43(a)(1)(B) of the Lanham Act (15 U.S.C. § 1125(a)(1)(B)), in that Morgan Stanley, in commerce, has made, and continues to make, false and misleading statements regarding the material qualities of its services.

67.    Defendant's false and misleading statements are material in that they are likely to influence a consumer's purchasing decisions.

68.    Defendant's false and misleading statements are widely distributed in interstate commerce by the internet and specifically targets consumers who are currently or potentially interested in purchasing financial services.

69.    Defendant's violations of Section 43(a) of the Lanham Act have been and are knowing, willful, intentional, and deliberate.

70.    Defendant's infringing and misleading acts have caused and, unless restrained by this Court, will continue to cause, irreparable harm, loss, and injury to consumers.

## COUNT V – FALSE ADVERTISING
### (violation of RSA § 358)

71.    Plaintiff incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

72.    The aforesaid acts of Morgan Stanley constitute false advertising in violation of RSA § 358, in that Morgan Stanley, in commerce, has made, and continues to make, misrepresentations regarding the material qualities of its financial services offered on the Morgan

Stanley website that are likely to mislead a reasonable consumer.

73.     Morgan Stanley's acts have been and are knowingly or recklessly deceptive with the intent of attracting customers.

74.     Morgan Stanley's false and misleading statements and advertisements have caused, and are likely to continue to cause, injury to the public at large, including consumers in this state, and have caused injury to Plaintiff.

## COUNT VI
### (Common Law Unfair Competition)

75.     Plaintiff incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

76.     The aforesaid acts of Morgan Stanley constitute common law unfair competition, in that Morgan Stanley, in commerce, has made, and continues to make, misrepresentations regarding the material qualities of its financial services offered on the Morgan Stanley website that are likely to mislead a reasonable consumer.

77.     Morgan Stanley's acts have been and are knowing, willful, intentional deliberate and are deceptive and misleading in a material way.

78.     Morgan Stanley's false and misleading statements and advertisements have caused, and are likely to continue to cause, injury to the public at large, including consumers in this state,

## COUNT VI
### (Unjust Enrichment)

79.     Plaintiff incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

80.     Morgan Stanley's wrongful acts, as described above, provide an unfair

commercial and financial benefit to Morgan Stanley to which it is not in law or equity entitled.

81.     Morgan Stanley's receipt of the above benefits and profits is at Plaintiff's expense.

82.     Morgan Stanley's actions have been knowing, willful, intentional, and deliberate, and deprived Plaintiff of money she should have maintained.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

1.     Awarding compensatory damages in favor of Plaintiff against Morgan Stanley for all damages sustained as a result of Morgan Stanley's wrongdoing, in an amount to be proven at trial;

2.     Awarding Plaintiff such exemplary and punitive damages as the Court finds appropriate to deter any future unlawful conduct by Morgan Stanley;

3.     Awarding Plaintiff a disgorgement of profits;

4.     Permanently enjoining Morgan Stanley, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Morgan Stanley, from false advertising;

5.     Awarding Plaintiff interest, including pre-judgment interest, on the foregoing sums; and

6.     For such other and further relief as the Court may deem just and proper.


## JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil

Procedure.

Dated: May 17, 2019

Respectfully submitted,

By: */s/ R. Terry Parker*

R. Terry Parker, Esquire
RATH, YOUNG and PIGNATELLI, P.C.
One Capital Plaza
Concord, NH 03302-1500
Telephone: (603) 226-2600
Email: rtp@rathlaw.com

*Attorneys for Plaintiff*
*Carolyn Johnson*